
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHN LEZELL BALENTINE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | 2:03-CV-00039 |
| NATHANIEL QUARTERMAN, Director, | § | **Capital Litigant** |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner JOHN LEZELL BALENTINE, a state prisoner, has filed with this Court a

Petition for a Writ of Habeas Corpus by a Person in State Custody seeking to set aside his Potter

County, Texas conviction for capital murder and the assessment of the death penalty. For the

reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that the

petition be DENIED.

I.
PROCEDURAL HISTORY

A jury convicted petitioner of capital murder, and his punishment was assessed at death by

lethal injection. *State v. Balentine*, No. 16,877-E (Dist. Ct. of Potter County, 108th Judicial Dist. of

Texas, Apr. 21, 1999). The case was appealed to the Texas Court of Criminal Appeals, which

affirmed the conviction and death sentence. *Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App.

2002). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Petitioner filed a state application for writ of habeas corpus on January 22, 2001, which was denied by written order on December 4, 2002. *Ex parte Balentine*, 54,071-01 (Tex. Crim. App. Dec. 4, 2002) (unpublished).

Petitioner filed his petition for writ of habeas corpus in this Court on December 1, 2003, including with it requests to expand the record, for discovery, and for an evidentiary hearing.[1] (Doc. 21). Petitioner filed his first amended petition on August 19, 2004. (Doc. 27). Respondent filed his answer on December 15, 2004. (Doc. 37). Oral argument was heard June 7, 2007, and post-argument briefs were filed June 21, 2007, by petitioner (Doc. 51), and July 2, 2007, by respondent (Doc. 52).

## II.
## FACTUAL BACKGROUND

At 2:30 A.M. on January 21, 1998, Officer Timothy Hardin of the Amarillo Police Department responded to a call that shots had been fired in an Amarillo, Texas neighborhood. (21 Reporter's Record, "RR", at 138, 146; 4 RR at 75). While investigating the call, he noticed petitioner walking from the area where the shots had been fired. (21 RR at 139, 142, 146-47, 152-53; 4 RR at 76, 79-80). Believing petitioner to be acting in a suspicious manner, Officer Hardin conducted a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Petitioner gave the officer incorrect information regarding his identity and address. A subsequent frisk of petitioner's person revealed a .32 caliber bullet in his possession. (21 RR at 150, 155, 159-

---

[1] This proceeding is governed by the terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254, because the petition was filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997).

60, 163-66; 4 RR at 86, 89-95, 98-99).  However, no weapon was found and petitioner was not

taken into custody, but was eventually released.  Later that morning, three young men were

discovered murdered in that same neighborhood, and in a house where petitioner had resided until a

few weeks before the incident when he broke up with Misty Caylor, his girlfriend who lived there.

(20 RR at 184-194; 22 RR at 127-30).  Each of the young men had been shot in the head with a .32

caliber bullet while they slept.  (20 RR at 264-65; 21 RR at 20, 24, 65; 20 RR at 228-31; 22 RR at

80, 258-262, 267).  One of the murder victims was Mark Caylor, who had threatened petitioner

because of petitioner's treatment of Misty Caylor, Mark's sister.  (20 RR at 55-56, 60, 191-92; 22

RR at 131-32).  The investigation focused on petitioner and an arrest warrant was issued.  Petitioner

left the Amarillo area shortly after the murders, but was later arrested in Houston, Texas.  After his

arrest in Houston, petitioner confessed he had committed these crimes.  (22 RR at 131-141, 152).


III.
PETITIONER'S ALLEGATIONS

In this federal application, petitioner contends his conviction is in violation of the

Constitution and laws of the United States for the following reasons:

1.      Petitioner was denied his Fourth Amendment right to be free from
        unreasonable searches and seizures when testimony and physical evidence
        were introduced regarding his illegal detention and search on January 21,
        1998;

2.      Petitioner was denied his Fourth Amendment right to be free from
        unreasonable searches and seizures when the police searched and seized
        evidence from his dwelling without a search warrant;

3.      Petitioner was denied his Sixth and Fourteenth Amendment rights to a fair
        and impartial trial when the trial court failed to provide a jury instruction
        pursuant to article 38.23 of the Texas Code of Criminal Procedure;

4.      Petitioner was denied his Sixth Amendment right to the effective assistance of counsel because counsel failed to object to the "consent" given by the owner of the premises searched, and failed to request a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure;

5.      Petitioner was denied his right to due process and to the effective assistance of appellate counsel because his confession was obtained in violation of article 38.22 of the Texas Code of Criminal Procedure;

6.      Petitioner was denied his Eighth and Fourteenth Amendment rights to individualized sentencing because the trial court failed to define "life sentence" and/or instruct the jury that if sentenced to life in prison, petitioner would be required to serve at least forty (40) calendar years before becoming eligible for parole;

7.      Petitioner was denied his Eighth Amendment right to individualized sentencing under the "Lockett Doctrine;"

8.      Petitioner was denied his Eighth and Fourteenth Amendment rights to individualized sentencing because trial counsel failed to present any evidence during the punishment phase of the trial; and

9.      The cumulative effect of all of the trial errors resulted in an unfair trial and a denial of due process as guaranteed to petitioner by the Fourteenth Amendment to the United States Constitution.

Respondent has answered petitioner's allegations and contends petitioner is not entitled to relief on any of the nine grounds, and submits petitioner is barred from relief for procedural reasons as to the majority of his claims. Specifically, respondent contends petitioner is barred from relief as to grounds one and two under *Stone v. Powell*, 428 U.S. 465, 495, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), and contends petitioner failed to exhaust his state court remedies and is now procedurally barred from any relief as to part of ground two and as to grounds three, four, five, seven, eight and nine. As to ground six, which has been exhausted, respondent contends it is without merit.

IV.

PROCEDURAL BAR

The issue of petitioner's failure to exhaust and whether petitioner is procedurally barred from presenting the majority of his claims is critical. The undersigned will address the issue of whether petitioner is procedurally barred prior to discussing the specifics of the individual grounds for relief.

Federal courts will not consider the merits of a claim resolved by the state courts on an independent and adequate state law ground. *See Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991). To bar federal review, a state law ground must be "firmly established and regularly followed" at the time it was violated, *see Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991), and the state court's application of the procedural rule must not otherwise be exorbitant. *See Lee v. Kemna*, 122 S.Ct. at 885. Petitioner bears the burden of showing a state procedural rule is not adequate to bar federal review, *see Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997), that sufficient cause and prejudice exist to excuse the procedural default, or that imposition of the bar would result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565.

Anticipating respondent's assertion of the procedural bar, petitioner, in his amended petition, contends he should be excused from it because adequate cause exists to avoid application of the procedural bar. Petitioner submits the state habeas procedure in Texas is ineffective, and warrants non-application of the procedural bar for the following reasons:

1.      His state habeas counsel acted outside the course of the representation of

petitioner. Consequently, petitioner argues he is not liable for any attorney errors committed when state habeas counsel was not acting as his agent and that such constitutes adequate cause to overcome the procedural bar;

2. Petitioner contends adequate cause has been established to excuse any failure to exhaust because he has not been provided meaningful access to the courts. Petitioner asserts that even if he is not entitled to effective assistance of counsel in state habeas proceedings, it was not constitutionally permissible to require him to proceed with an attorney who hindered his ability to present his claims;

3. Petitioner contends he should be excused from the exhaustion requirement and the procedural bar because the state does not provide an adequate remedy for its due process violations and the denial of petitioner's statutory guarantee of competent habeas counsel under Texas law; and

4. Petitioner argues article 11.071 grants condemned state habeas applicants the right to competent counsel, but fails to provide and/or ensure effective assistance of counsel for condemned state habeas petitioners.

Petitioner's counsel devoted considerable time and effort addressing the question of whether Balentine's failure to exhaust can be excused. Petitioner's arguments constitute twenty-seven (27) pages of the amended petition as well as the major part of his post-oral argument supplementation. Counsel very effectively advances reasons Balentine should not be procedurally barred from presenting his unexhausted claims (*see* pp. 12-49 of the First Amended Petition for Writ of Habeas Corpus, and the June 21, 2007 submission). All of petitioner's arguments will not be repeated here, although some of those arguments are summarized below.

To excuse his failure to exhaust state remedies, petitioner asserts he should not be held responsible for the failures of his counsel in the state post-conviction habeas corpus proceedings because counsel was not qualified, was functioning outside of the course of those proceedings, and was not acting in furtherance of such litigation. (Am. Pet. at 12-30). As a result, petitioner argues he was deprived of meaningful access to courts, of due process of law in the state post-conviction

habeas corpus proceedings, and of the constitutionally-protected property rights to legal services without an adequate remedy.  (Am. Pet. at 31-43).  Lastly, petitioner argues the state corrective process is ineffective to protect the rights of sentenced defendants.  (Am. Pet. At 43-49).

As to claims that ineffective assistance of state habeas counsel violates a constitutional right, petitioner acknowledges "all such arguments have been rejected, beginning with the Supreme Court's decision in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)."  (Am. Pet. at 43-44).  There is no constitutional right to counsel in state post-conviction habeas corpus proceedings.  *See Coleman v. Thompson*, 501 U.S. at 752, 111 S.Ct. at 2566.  Accordingly, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.  *See id.*; *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001).  Further, in construing 28 U.S.C. §2254(b)(1)(B)(ii), the Fifth Circuit Court of Appeals has rejected the argument that ineffective assistance of state habeas counsel could constitute the kind of circumstances that would excuse a petitioner's failure to exhaust state remedies under that provision.  *See Roberts v. Dretke*, 356 F.3d 632, 640 (5th Cir. 2004).  Petitioner attempts to distinguish these holdings by characterizing his challenge as one to the state habeas system as a whole contending it is ineffective because it permits the appointment of unqualified or ineffective state habeas counsel in article 11.071 proceedings.  Petitioner also argues the state system is flawed in that it does not provide a method to address instances where ineffective assistance of counsel were appointed for state capital habeas review.  Petitioner contends this renders the state corrective process ineffective and that under 28 U.S.C. § 2254(b)(1)(B)(ii), he should be excused from the exhaustion requirements and his claims should not be procedurally barred.  Although petitioner contends he is not asserting a claim of ineffective assistance of state habeas counsel, respondent counters that the essence of all of petitioner's arguments are on the theory that ineffective assistance of state habeas counsel violates a constitutionally-based right

sufficient to constitute cause to excuse a procedural default. The Court agrees.

Petitioner has not offered any theory by which he contends the state habeas system has been rendered ineffective except that it allows ineffective counsel to be appointed. For example, petitioner has not challenged the statutory scheme for article 11.071 review nor has he challenged any other aspect of the state habeas system. Instead, he only argues the system does not guarantee a defendant the effective assistance of counsel. In the final analysis, these claims attacking the adequacy of the state habeas mechanism are, in essence, claims of ineffective assistance of state habeas counsel. Petitioner has not shown, nor can petitioner show, that the state system is so flawed that no habeas petitioner receives the effective assistance of counsel on state habeas review.[2] The Fifth Circuit has recognized this problem and addressed it. In *Nenno v. Quarterman*, 489 F.3d 214 (5th Cir. 2007), the Fifth Circuit answered the question of whether the Constitution requires that states provide condemned prisoners with counsel who provide effective assistance in state habeas proceedings, holding:

> Counsel ably states the case for requiring the state to provide counsel in state habeas review of death sentences. That the primary battle in collateral attack of capital sentences is now in the state courts, located there both by the jurisprudence of the Court and the Congress cannot be denied. Nor do we question the importance of competent representation for defendants traversing this terrain. We say only that we do not make light of the argument, saying no more because this inferior court could not grant the requested relief if it were persuaded to do so. The argument must be made to the Congress or perhaps the Supreme Court. And so we must deny a certificate of appealability on this claim as well.

*Id.* at 217. If, as set forth in *Nenno*, the Fifth Circuit Court of Appeals deems itself powerless to address or provide relief with respect to unexhausted claims such as are presented here. Clearly, per *Nenno*, this Court may not do so.

---

[2] Counsel has requested an evidentiary hearing so petitioner may present evidence of the inadequacy of the state habeas system. (Am. Pet. at 154-55, Doc. 27; Mot. Ev. Hrg., Doc. 45; Post-Hrg. brief, Doc. 51).

If petitioner could now present his unexhausted claims to the state courts, he could cure the earlier failure to exhaust. However, Texas law precludes successive habeas claims except in narrow circumstances. *See* Tex.Code Crim. Proc. Ann. art. 11.071 § 5 (Vernon Supp.2001). Under § 5, unless petitioner presents a factual or legal basis for a claim that was previously unavailable or shows by a preponderance of the evidence that, but for a violation of the United States Constitution, no rational juror would have found for the State, petitioner is procedurally barred from returning to the Texas courts to exhaust his claims. *Id.* From the record before this Court and the allegations presented, petitioner could not satisfy this exception and would be barred from making this claim in a successive state habeas corpus petition. Therefore he is procedurally barred from proceeding with this claim in federal court. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001)(citing *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1). Other than his claim that the state habeas system is deficient, petitioner asserts no other reason to excuse him from any procedural default barring this claim from federal habeas corpus review. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591.

The effect of application of the procedural bar, an issue addressed during oral argument, is that under the present state of the law, both in the Supreme Court and in the Fifth Circuit, a death penalty petitioner who has claims of ineffective assistance of trial and appellate counsel may not obtain any relief on the merits of those claims in any court, state or federal, if they were not presented during state habeas. If such claims are not presented to the state habeas courts, they will be unexhausted and procedurally barred, and ineffective assistance of habeas counsel will not excuse the default. The only other exception to that rule would be a situation where a petitioner asserts a claim of actual innocence to overcome the procedural bar. Petitioner Balentine has not made a claim of actual innocence, and under the facts of this case could not assert such a claim.

V.

GROUNDS FOR RELIEF

A.

Grounds One and Two

In his first and second grounds, petitioner complains his rights under the Fourth Amendment to the United States Constitution were violated by two different searches and seizures. In ground one, petitioner alleges he was subjected to an investigative detention or *Terry* stop by Amarillo Police Officer Hardin on January 21, 1998, which he contends became a prolonged detention or illegal arrest. (*See* the Amended Petition, pp. 51-53 for factual background with respect to petitioner's ground one). Under ground two, petitioner alleges his Fourth Amendments rights were violated by an unreasonable search and seizure when police searched a dwelling at 308 N. Virginia, Amarillo, Texas, where petitioner had been staying. (*See* Amended Petition, pp. 68-69 for facts supporting ground two). As a result of these searches, police found a .32 caliber shell in his pocket after a pat down during the investigative stop challenged under ground one and found a store receipt for the purchase of a box of .32 caliber ammunition during the dwelling search challenged under ground two. Petitioner contends the .32 caliber shell recovered during the pat down should have been suppressed because the search did not occur until after the investigative stop became so prolonged as to constitute an illegal arrest and a Fourth Amendment violation. Petitioner contends the ammunition sales receipt found during the search challenged under ground two should have been suppressed because the police entered petitioner's residence without a warrant and the consent given by the landlord, Mr. Means, was not voluntary nor was it effective to allow a search of petitioner's residence.

Both of these claims were raised prior to trial by motions to suppress which were denied by

the trial court.  On direct appeal, the Texas Court of Criminal Appeals addressed these searches in detail and affirmed the trial court, finding no Fourth Amendment violations.

Respondent has not addressed the merits of either of these searches.  Instead, respondent contends federal relief is not available pursuant to *Stone v. Powell, supra.*

Ordinarily, Fourth Amendment claims are not cognizable on federal habeas corpus review and the  Exclusionary Rule may not be invoked in federal habeas corpus proceedings to collaterally challenge the admission of evidence obtained as a result of illegal searches and seizures unless the state court did not afford a full and fair opportunity to litigate such Fourth Amendment claims.  *See Stone v. Powell*, 428 U.S. at  494;  *Swicegood v. Alabama,* 577 F.2d 1322, 1324 (5th Cir. 1978). Here, not only was petitioner afforded ample opportunity to litigate these claims in state court, he meaningfully challenged the searches by pretrial motions to suppress upon which evidentiary hearings were held, by objections at trial, by filing a motion for new trial upon which a hearing was conducted, by points of error on direct appeal to the Texas Court of Criminal Appeals, and by post-conviction claims during habeas corpus review.  (4 RR at 73-295; 6 RR at 11; 26 RR at 6; 28 RR at 6; CR at 195-96, 348; State Appellant's Brief at 5-17; SHR 112-19).  Petitioner does not dispute these opportunities and the litigation of his claims in state court, but argues he should be afforded another opportunity to present these claims on federal habeas because the state courts did not apply the correct constitutional standard.  (Am. Pet. at 58).  Even so, petitioner notes Fifth Circuit Court of Appeals precedent against him on this point, *see id.*; *Swicegood*, 577 F.2d at 1324, but submits federal habeas review of these Fourth Amendment issues is not precluded, *citing Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978).  *Gamble v. Oklahoma*, however, is not binding precedent in the Fifth Circuit.  Fifth Circuit law pursuant to *Swicegood v. Alabama, supra*, is that *Stone v. Powell* precludes federal habeas corpus review of Fourth Amendment claims if the state

provided <u>an opportunity</u> for a full and fair hearing. *Swicegood* rejected any concept that the term "full and fair hearing" means the state courts must correctly apply federal constitutional law. In fact, the court in *Swicegood*, at page 1324, held any argument contending a litigant did not receive "full consideration" of a Fourth Amendment claim in the state courts because the state courts dealt with the issue only "in passing" or "without any reasoned consideration" or that there was a denial of fair consideration because the state courts misapplied settled principles of constitutional law, would, if accepted, render *Stone* meaningless.

Fifth Circuit cases subsequent to *Swicegood* have not adopted the rationale of *Gamble*. In *Christian v. McKaskle*, 731 F.2d 1196 (5th Cir. 1984), the court held *Stone v. Powell* applied even if the state habeas court erroneously held a petitioner's Fourth Amendment claim had been adjudicated on direct appeal. In *Sonnier v. Maggio*, 720 F.2d 401, 409 (5th Cir. 1983), the court, citing *Swicegood*, held an allegation the state court erred in its determination of a Fourth Amendment issue did not suffice to avoid the *Stone* bar, even if the error of law was on a constitutional issue. The Fifth Circuit did not find relief available under *Gamble v. Oklahoma*, which the court characterized as holding that *Stone* did not foreclose a habeas challenge unless the state court "willfully refuses to apply the correct and controlling constitutional standards."

In *Bridgers v. Dretke*, 431 F.3d 853, 861 (5th Cir. 2005), a habeas death penalty case, the court held, in denying a certificate of appealability, that *Stone* barred consideration of the petitioner's Fourth Amendment claim. Citing *Swicegood*, the court held the petitioner was not denied a full and fair opportunity to litigate even if the trial court wrongly decided the Fourth Amendment claim. Consequently, the merits of petitioner's Fourth Amendment claims in grounds one and two are not cognizable on federal habeas review, and no relief should be granted under either ground.

In reaching this determination, it is noted that application of the *Stone v. Powell* bar is not a determination grounds one and two are frivolous or do not otherwise have arguable merit. Both searches present significant issues. The first search occurred only after an initial pat down of petitioner produced negative results, and after the passage of considerable time. An extended *Terry* stop is an issue which has been addressed over the past several years by the federal courts, particularly with regard to vehicular traffic stops and consensual searches. *See United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) (*en banc*). The second search, of petitioner's dwelling, was not pursuant to a search warrant. Instead, it was based upon consent from the owner of the premises. The legality of this search presents issues relating to petitioner's expectation of privacy and the landlord's control over what was basically a storeroom, but which nevertheless was still plaintiff's place of abode, even if only temporarily and rent free.

Application of *Stone v. Powell* means the federal courts will never address the merits of either of these two Fourth Amendment issues.[2] This, however, appears to be exactly the type case *Stone v. Powell* is meant to apply. The rationale of *Stone v. Powell*, is that the "exclusionary rule," a judicially created remedy to deter police misconduct, would have very little, if any, effect on police misconduct if applied in collateral proceedings.

Additionally, these Fourth Amendment questions were well presented at the trial court level and constituted the major points of error raised on direct appeal. In finding no Fourth Amendment violations occurred, the Texas Court of Criminal Appeals wrote extensively, devoting almost the entirety of its opinion to the Fourth Amendment issues. That state court opinion more than adequately considered and addressed these issues. While there may be room for debate regarding

---

[2]Petitioner could have obtained federal court review of these Fourth Amendment issues by filing a petition for writ of certiorari with the Supreme Court following the Texas Court of Criminal Appeals affirmance of petitioner's conviction and their finding that no Fourth Amendment violation occurred on the Texas Court of Criminal Appeals opinion on direct appeal.

the legality of these searches, the state court decision finding these searches not unlawful, even if it was incorrect, was not an unreasonable decision. Consequently, even if *Stone v. Powell* did not apply, the state court decision is entitled to deference under the AEDPA.

Since both of these grounds are barred by *Stone*, it is not necessary to address respondent's claim of a procedural bar for a non-exhaustion as to a part of ground two.

## B.
## Ground Three

In petitioner's third claim, he contends he was denied his Sixth and Fourteenth Amendment rights to a fair and impartial trial when the trial court failed to give a jury instruction to not consider any evidence the jury found to have been illegally obtained. In order to satisfy the exhaustion requirement, petitioner relies upon the third point of error he presented to the Texas Court of Criminal Appeals in his direct appeal brief. (Am. Pet. at 79; State Appellant's Brief at 17-18). However, this claim was presented to the state court only as a violation of a state procedural rule which provided for an instruction that a jury disregard any illegally-obtained evidence. *See* Tex.Code Crim. Proc. Ann. art. 38.23. (Vernons 1997).

The Texas Court of Criminal Appeals rejected petitioner's appellate claim on the basis the jury instruction was not necessary under Texas law because there was no factual dispute regarding how the evidence in question was obtained and, therefore, no fact issue for the jury to resolve.[3] *See Balentine*, 71 S.W.3d at 773-74. The state court also noted petitioner had not requested such an instruction at trial and, in fact, made no objection to the jury charge given. *Balentine*, 71 S.W.3d at

---

[3] Had this claim been exhausted, it would be denied on its merits. The state court finding that there was no factual dispute regarding these searches has not been shown to be incorrect, much less unreasonable. *See* 28 U.S.C. § 2254(d) and (e). Therefore, the lack of such an unnecessary instruction could not have rendered the entire trial fundamentally unfair. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987).

774 n. 11.

A federal court will review the merits of alleged errors in jury instructions given by a state trial court only to determine whether the claimed errors rendered the entire trial fundamentally unfair. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987). Petitioner contends the absence of this exclusionary jury instruction deprived him of a fair and impartial trial in violation of the Sixth and Fourteenth Amendments. (Am. Pet. at 76). Petitioner does not contend he made this claim before the state courts, but reasons it was exhausted even though his appellate claim did not mention federal law or even a right to a fair trial. Petitioner contends it was exhausted because his brief on direct appeal did quote the applicable state procedural rule, which rule referenced federal law. Petitioner further argues he cited state-court cases that discussed federal law. (Am. Pet. at 79). Petitioner contends this put the state court on notice of his federal-law claims. In deciding this claim, however, the state court did not address how any jury instruction or the lack thereof affected petitioner's right to a fair trial or any other right under federal law.

In *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001), the Court of Appeals held that in order to exhaust, a petitioner must have fairly presented the substance of his claim to the state courts. "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." *Id.*, citing *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), and *Vela v. Estelle*, 708 F.2d 954, 958 n. 5 (5th Cir. 1983). Further, the federal nature of his claim must be apparent from the face of the allegations plead before the highest state court. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not

alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).

Further, a petitioner's allegations before the state court must specifically identify the federal-law nature of the claims. The purpose of the exhaustion requirement, *i.e.*, to give the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights, is not satisfied by vague references to federal law.

> A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights. Moreover, to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement.

*Wilder*, 274 at 260.

The reference in the state statute to federal law only addressed the means used in obtaining evidence prior to trial, and did not constitute even a "fleeting reference" to any violation of federal law arising out of the trial court's own action in failing to give the instruction. Clearly, that federal law theory was not presented to the state courts. Additionally, if petitioner is attempting to use this ground as a vehicle to reassert his Fourth Amendment claims, such claims are not cognizable on federal habeas-corpus review. *Stone v. Powell, supra*. In either event, the merits of this claim are not properly before this Court.

It is the finding of the undersigned that petitioner's third claim asserts a violation of the Constitution for failing to provide an exclusionary instruction under state law, and that petitioner's appellate point did not fairly present to the state courts any federal constitutional violation for failing to provide such an instruction. Therefore, petitioner's third ground for relief is unexhausted.

For the reasons previously set forth, petitioner has not shown he would now be entitled to make this claim in a successive state habeas petition, that the state procedural law precluding subsequent writs is inadequate to bar federal review, or that he has any sufficient excuse for his procedural defaults. Therefore, petitioner's third claim for federal habeas corpus relief is procedurally barred.

## C.
### Ground Four

In his fourth ground for relief, petitioner claims he was deprived of the effective assistance of counsel under the Sixth Amendment to the United States Constitution because trial counsel failed to request a jury instruction pursuant to art. 38.23 of the Texas Code of Criminal Procedure to contest the search of petitioner Balentine's residence and subsequent seizure of his property.[4] (Am. Pet. at 80-84). Petitioner alleges he presented this claim in his state habeas application as state claim number eighteen. (Am. Pet. at 84). Review of the record, however, reveals state habeas claim number eighteen asserts trial counsel's failure to request an issue on the voluntariness of Balentine's confession under art. 38.22(7) of the Texas Code of Criminal Procedure, not article 38.23. Consequently, this federal claim is a different claim relying upon a different state law ground. (SHR at 8, 124). The state habeas court only addressed the claimed failure to request a jury instruction under art. 38.22(7) and did not address any failure to request an instruction under art. 38.23. (SHR at 256). Therefore, petitioner's fourth claim is unexhausted. For the reasons

---

[4] Had this claim been duly exhausted, it would be denied on its merits. Trial counsel's performance in this regard could not have been either deficient or prejudicial because the Texas Court of Criminal Appeals determined petitioner was not entitled to such an instruction under state law due to the lack of a disputed fact issue for the jury to resolve. *See Balentine*, 71 S.W.3d at 773-74. This matter of state law has been determined adversely to petitioner. (*See also* State Habeas Finding, "SHF", No. 2; State Habeas Record, "SHR", at 255-56). Federal courts in post-conviction habeas corpus proceedings do not sit to review questions of state law. *See Engle v. Isaac*, 456 U.S. 107, 119-21, 102 S. Ct. 1558, 1567-68, 71 L.Ed.2d 783 (1982); *see also Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (referring to "the long-standing principle that federal courts do not sit to review questions of state law."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding"), *cert. denied*, 112 S. Ct. 214 (1991).

previously set forth, petitioner has not shown he would now be entitled to make this claim in a successive state habeas petition, that the state procedural law precluding subsequent writs is inadequate to bar federal review, or that he has any sufficient excuse for his procedural defaults. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Therefore, petitioner's fourth claim for federal habeas corpus relief is procedurally barred.

## D.
### Ground Five

In his fifth ground, petitioner contends his rights to due process under the Fourteenth Amendment and to effective assistance of counsel on appeal were violated because his confession was obtained in violation of article 38.22 of the Texas Code of Criminal Procedure. (Am. Pet. at 85-91). Petitioner claims his right to due process under the state law requirement that the confession be recorded was violated because petitioner first confessed orally to the officer before he confessed on the audio recording which was taken. Petitioner argues this preceding oral confession was not recorded. (Am. Pet. at 85-88). Petitioner has not, however, identified any authority, either state or federal, to support his construction of the state-law recording requirement so as to invalidate a confession that was actually recorded because of an earlier unrecorded statement.[5] Petitioner adds his right to the effective assistance of counsel was violated by trial counsel's failure to move for a mistrial in order to preserve his objection for appeal, and of appellate counsel's failure to brief the issue at all.[6] (Am. Pet. at 88, 90). Petitioner does not claim to have exhausted this combined

---

[5]This is a liberal construction of petitioner's claim. The claim actually appears to be that the oral confession which was recorded and admitted into evidence violated art. 38.22.

[6] Had Petitioner exhausted this claim, it would be denied for lack of merit. Petitioner has not satisfied either the deficient performance prong or the prejudice prong required to prove ineffective assistance of counsel under the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

ground for relief and relies upon his argument that sufficient cause and prejudice exists to excuse his default. (Am. Pet. at 91). As set forth above, this Court has found such argument insufficient to excuse petitioner's failure to exhaust state remedies.

Further, this Court has conducted an independent review of the record to ascertain whether this claim could be considered exhausted. Although petitioner does not rely upon it to satisfy the exhaustion requirement, petitioner made other ineffective assistance of counsel claims in the state post-conviction habeas corpus proceeding that appear somewhat similar. His seventeenth ground for state habeas corpus relief alleged he was denied the effective assistance of counsel at his trial under the Sixth and Fourteenth Amendments because of trial counsel's failure to request findings of fact and conclusions of law under article 38.22(6) of the Texas Code of Criminal Procedure regarding the voluntariness of his confession. (SHR at 120-23). However, petitioner did not mention anything in that state ground about any violation of the state-law recording requirement, nor did he identify in that claim precisely how the confession could have been considered involuntary. Instead, he merely alleged that since trial counsel knew the voluntariness of his confession would be at issue, trial counsel should have requested such findings and conclusions, and that without them the reviewing court "is unable to determine whether the trial court ruled properly." (SHR at 120, 122). This ground does not reveal any theory showing the confession was involuntary, much less identify the precise claim being asserted under ground five in this proceeding. Therefore, petitioner properly did not attempt to rely upon it to show exhaustion of his federal claim.

It is also noted ground number eighteen in petitioner's state petition for habeas corpus relief complained of a failure by trial counsel related to the use of petitioner's confession at trial. That state claim, however, specifically complained of trial counsel's failure to request a jury instruction

regarding the confession and did not mention any failure of trial counsel to move for a mistrial in order to preserve the objection for appeal, or mention any failure arising out of appellate counsel's lack of briefing on the issue, both of which constitute his federal claim. (Am. Pet. at 88, 90). Therefore, petitioner properly did not attempt to rely upon ground number eighteen of his state petition for habeas corpus relief to show exhaustion of this claim. (*See* SHR at 124).

This Court has found no state pleading that could be construed to have fairly presented this federal claim to the state courts in any form. Consequently, this claim is unexhausted and petitioner has not provided sufficient excuse for his failure to exhaust this claim, nor shown he would now be entitled to make this claim in a successive state habeas petition. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Petitioner's fifth ground for relief is unexhausted and procedurally barred.

Even if it were not procedurally barred, this ground for relief is without merit. The confession introduced at trial was recorded in compliance with the Texas Code of Criminal Procedure, was found to be in compliance with art. 38.22 by the trial court. The oral confession which petitioner appears to be attacking in ground five is a statement petitioner gave to Sergeant Horn during the initial interrogation of petitioner by Sergeant Horn, and prior to the officer beginning the audio recording. This initial unrecorded statement was never introduced into evidence at trial although it was mentioned by Sergeant Horn when testifying. When it was mentioned, the trial court judge quickly admonished the prosecution regarding this unrecorded oral confession and avoided any possible error.

## Petitioner's Supplemental Argument

In his supplement to his amended petition, petitioner presents a different argument under

ground five than he previously presented. Respondent has objected to this new argument and contends it not only is unexhausted, but is an attempt to submit a new ground and leave of the court has not been granted to petitioner to amend his petition. While the argument in petitioner's supplement still challenges petitioner's confession to Sergeant Horn in Houston, Texas on or about July 25, 1998, it is the opinion of the undersigned that respondent's contention is sound and that this claim relating to an inadmissible confession in petitioner's supplement to his amended petition is a different claim from the one originally submitted. The claim originally submitted was a claim that petitioner's confession did not comply with article 38.22 of the Texas Code of Criminal Procedure, and, consequently, counsel was ineffective for failing to challenge the confession on that basis. This new claim focuses on an initial unrecorded confession.[7] Petitioner made no argument that this earlier unrecorded confession tainted the subsequent recorded confession which was taken in compliance with art. 38.22, which is the argument petitioner makes in his supplement.

Even if the claim petitioner presents in his supplement is not a newly asserted claim, it is without merit. Although petitioner has cited case law that an <u>involuntary</u> confession could taint a later confession and, in such an instance the court would have to look at, among other things, the proximity in time when the second confession was taken, petitioner has not argued nor has he shown the initial unrecorded confession or statement given by petitioner to Sergeant Horn was involuntary. While the first confession was not recorded as required by art. 38.22 and the trial judge, recognizing that fact, did not allow its admission into evidence, the fact that it was not recorded did not render it involuntary. Article 38.22 is merely a state statutory procedure whereby an unrecorded oral confession is not admissible in a Texas state criminal proceeding unless

---

[7]The unrecorded confession was not admitted into evidence before the jury.

circumstances are present which are not applicable here.  The failure to record in compliance with article 38.22 may render the confession inadmissible in state court, but it does not constitute a determination that the confession was involuntary.  The United States Constitution does not prohibit the introduction of oral confessions and, in fact, oral confessions are regularly introduced into evidence during federal criminal trials.  The second confession was recorded and was admitted into evidence because it was in compliance with article 38.22.  The Court understands petitioner has also submitted this claim as an ineffective assistance of counsel claim.  However, counsel was not deficient because there was no objection counsel could have lodged to prohibit the admission of the properly recorded oral confession into evidence.  The first confession was not involuntary and did not, in any way, taint the second admissible confession.

For all of the reasons recited above, petitioner's ground five as originally stated in his amended petition is unexhausted and now procedurally barred.  His supplemental argument contained in the June 21, 2007 pleading is also unexhausted, but even if it were not unexhausted and even if it did not constitute an unauthorized attempt to amend, it is without merit.

E.
Ground Six

Under ground six, petitioner alleges he was denied his Eighth and Fourteenth Amendment rights to individualized sentencing because the trial court failed to define a life sentence and/or instruct the jury that if petitioner was sentenced to life in prison, he would be required to serve at least forty (40) calendar years before he would be eligible for parole.  Respondent argues such an instruction is not required and that the failure to give it does not violate petitioner's due process rights under the United States Constitution.  Respondent contends such an instruction is neither constitutionally nor statutorily required and that the Texas courts' rejection of this claim was neither

contrary to, nor an unreasonable interpretation of federal law.

This ground has been exhausted and is not procedurally barred. Petitioner has not, however, shown the adjudication of this claim by the state courts was unreasonable to the extent such ruling is not entitled to the AEDPA deference applicable. Even if the AEDPA deference scheme could be overcome, the claim is without merit because such an instruction was not mandated by either Supreme Court precedent or state law. Trial counsel initially presented this issue by seeking to voir dire the jury panel regarding the forty (40) year minimum. At the close of the punishment phase, petitioner's trial counsel reurged the issue and submitted a special requested charge on punishment seeking to have the jury instructed that if petitioner was sentenced to a term of life imprisonment rather than death, he would not become eligible for parole until the actual calendar time he had served without consideration of good conduct time was equal to forty (40) calendar years.

The jury instruction petitioner requested was as follows:

Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, he will not become eligible for parole until the actual calendar time served, without consideration of good conduct time, equals forty (40) calendar years. Eligibility for parole does not guarantee that parole with be granted.

(CR 317.) This instruction also contained provisions defining good conduct time and instructing the jury that they may consider the existence of parole law but not any possible actions by the Board of Pardons and Paroles to grant or deny parole or good conduct time. (*Id*. at 316-17). The trial court denied petitioner's requested instruction. (26 RR at 79). Petitioner presented this claim to the Texas Court of Criminal Appeals in his post-conviction application for writ of habeas corpus (SHR at 80-91), which was denied. *Ex parte John Lezell Balentine*, No. 54,071-01 (Tex.Crim.App. Dec. 4, 2002) (unpublished).

At the time of petitioner's trial, Texas law required any person serving a life sentence for

capital murder to serve at least 40 years before becoming eligible for parole. Tex. Gov. Code §

508.145(b) (1997). Texas law did not allow an instruction to the jury regarding parole eligibility,

*see Smith v. State*, 898 S.W.2d 838, 846 (Tex.Crim.App.1995), and none was given. (State Clerk's

Record, "CR", 323-347; 26 RR 80-86).

Petitioner argues this instruction was necessary because the amount of time an individual

would have to serve if convicted of capital murder but not sentenced to death is a particularly

relevant factor upon which juries make their life/death determinations in capital cases. Petitioner

presents law review articles and studies in support of this contention. Petitioner cites *McCleskey v.*

*Kemp*, 481 U.S. 279, 306, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), to support his argument that

petitioner was denied his Eighth Amendment right to reliability in sentencing because states cannot

limit the sentencer's consideration of any relevant circumstance that could cause the jury to decline

to impose the death penalty. Petitioner argues the trial court's ruling denied the jury information as

to the amount of time petitioner would have to serve and was information which could have caused

the jury to decline to impose the death penalty, *citing Simmons v. South Carolina*, 512 U.S. 154,

114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). Petitioner also points out Texas juries are provided

instructions as to the applicability of parole in all felony cases except capital murder and that the

Texas Code of Criminal Procedure now allows an instruction such as the one requested by counsel

for petitioner Balentine to be given in capital cases.

While petitioner makes a logical argument for the inclusion of such an instruction and in

fact, as petitioner points out, the Texas legislature has, subsequent to petitioner's trial, authorized

such an instruction in capital cases, petitioner is not entitled to federal habeas relief.

The Supreme Court in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129

L.Ed.2d 133 (1994) observed that federal courts will generally defer to a state court's determination

of what a jury should and should not be told about sentencing. *See id.* at 168, 114 S.Ct. at 2196. In

death penalty cases where future dangerousness is an issue and one of the options includes <u>life</u>

<u>without parole</u> (emphasis supplied), the Supreme Court carved out an exception to this general rule:

> But if the State rests its case for imposing the death penalty at least in part on the
> premise that the defendant will be dangerous in the future, the fact that the
> alternative sentence to death is life without parole will necessarily undercut the
> State's argument regarding the threat the defendant poses to society.

*Id.* at 168-69, 114 S.Ct. at 2196. The *Simmons* parole-ineligibility instruction is required only when

the defendant is ineligible for parole under state law. *See id.* at 156, 114 S.Ct. 2187; *Ramdass v.*

*Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000). Therefore, *Simmons*

requires that the jury be instructed about the defendant's parole eligibility "only where state law

provides for life imprisonment without possibility of parole as an alternative to the death penalty."

*Woods v. Cockrell*, 307 F.3d 353, 361 (5th Cir. 2002).

The Fifth Circuit has recognized this option was not available in Texas at the time of

petitioner's trial:

> In *Simmons*, the Supreme Court held that if the defendant's future dangerousness is at
> issue and state law prohibits the defendant's release on parole, due process requires
> that the sentencing jury be informed that the defendant is ineligible for parole. 512
> U.S. at 156, 114 S.Ct. at 2190. This Court has explained that *Simmons* requires that
> a jury be informed about a defendant's parole ineligibility only when (1) the state
> argues that a defendant represents a future danger to society, and (2) the defendant is
> legally ineligible for parole. *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994)
> (footnote omitted). Miller concedes that *Simmons* is distinguishable because
> Simmons was not eligible for parole and "would have effectively spent his natural
> life in the penitentiary." More to the point, because Miller would have been eligible
> for parole under Texas law if sentenced to life, we find his reliance on *Simmons*
> "unavailing." *Id.*

*Miller v. Johnson*, 200 F.3d 274, 290-91 (5th Cir. 2000).

Since a *Simmons*-type parole instruction was required only when the defendant was

<u>ineligible</u> for parole under state law, *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 147

L.Ed.2d 125 (2000), habeas relief is not available because no constitutional violation is shown. The fact that a particular instruction might have been appropriate or might have better explained the law, does not entitle a defendant to federal habeas relief. Consequently, petitioner is not entitled to relief under ground six on the merits.

<u>Non-retroactivity</u>

Even if the Supreme Court were to now determine a defendant is entitled to an instruction, such as the one requested by petitioner Balentine, such ruling would constitute a change in the law and petitioner would be barred from relief pursuant to *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). The Fifth Circuit has repeatedly held that claims such as the one presented here are *Teague* barred. *See Tigner v. Cockrell*, 264 F.3d 521, 524-25 (5th Cir. 2001); *Wheat v. Johnson*, 238 F.3d 357, 361-62 (5th Cir. 2001); *Clark v. Johnson*, 227 F.3d 273, 282; *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000).

"A threshold question in every habeas case, therefore, is whether the court is obligated to apply the *Teague* rule to the defendant's claim." *Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). The Fifth Circuit has applied a three-step test to determine whether a claim is *Teague*-barred:

> (1) we determine when [petitioner's] conviction and sentence became final, (2) we "survey the legal landscape as it then existed to determine whether a state court considering [petitioner]'s claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution[,]" and (3) if [petitioner] seeks the benefit of a new rule, we must decide whether the rule falls within one of the narrow exceptions to the non-retroactivity principle.

*Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001) (quoting *Caspari*, 510 U.S. at 390, 114 S.Ct. at 953). The Supreme Court has recognized two exceptions to this principle. The first is for new

rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. *See Teague*, 489 U.S. at 307, 109 S.Ct. at 1073; *Caspari*, 510 U.S. at 396, 114 S.Ct. at 956. The second is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of criminal proceedings. *See Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990); *Caspari*, 510 U.S. at 396, 114 S.Ct. at 956. The Fifth Circuit Court of Appeals has "held that unless the Supreme Court has clearly established that the new rule falls within one of the exceptions to the non-retroactivity principle of *Teague v. Lane*, that new rule could not be considered with regard to petitions governed by the AEDPA." *Cockerham v. Cain*, 283 F.3d 657, 660 (5th Cir. 2002) (citation omitted). Consequently, even if an argument similar to petitioner's is accepted by the Supreme Court, relief is not available to petitioner unless the Supreme Court makes its holding retroactive.

Since petitioner would have been eligible for parole if not given the death penalty, he was not entitled to a *Simmons* instruction on his parole eligibility, and any extension of *Simmons* would be barred under the non-retroactivity doctrine announced in *Teague*. *See Woods*, 307 F.3d at 361-62; *Coleman v. Quarterman*, 456 F.3d 537, 544-45 (5th Cir.2006); *Hughes v. Dretke*, 412 F.3d 582, 591-92 (5th Cir.2005). Therefore, petitioner's sixth claim for relief should be denied as barred by *Teague*.

F.
Ground Seven

In his seventh ground, petitioner contends his right to individualized sentencing under the "Lockett Doctrine" was denied because mitigating evidence existed which was not presented at trial. (Am. Pet. at 103-136); *see also Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The mitigation evidence identified by petitioner was developed during this federal habeas

proceeding, and includes the following: (1) Balentine's impoverished background did not meet his basic needs (Am. Pet. at 112, 129, 145); (2) Balentine's neighborhood was poor, dangerous and filled with racism against African-Americans, and his environment growing up was overflowing with crime, drugs and racial tension (Am. Pet. at 112, 117, 123-24, 128-30, 145); (3) Balentine's mother had limited abilities, married abusive husbands, suffered head injuries in a car wreck resulting in mental problems, and struggled to support her children requiring her to be absent from home in order to work (Am. Pet. at 112, 117, 119, 123, 126-27, 129-30, 145); (4) Balentine's father and stepfather were violent and abusive with his mother, his stepfather was verbally, emotionally and physically abusive with both his wife and the children, and other family members committed acts of violence in his presence (Am. Pet. at 112-13, 122-23, 125-26, 129-30); (5) the men in Balentine's life were negative role models, one of which attempted to sexually abuse Balentine when he was seven or eight years old (Am. Pet. at 113, 121-23, 126-27); (6) Balentine suffered an untreated head injury when he was six years old, wet the bed until he was ten years old, and was hit in the head by a rock while mowing the lawn (Am. Pet. at 113-14); (7) Balentine suffered from learning problems, including difficulty with his speech, math and reading, demonstrated impulsivity, poor decision making, and difficulty thinking about the consequences of his actions, felt stupid because he was in Special Education and dropped out of high school in the eleventh grade (Am. Pet. at 114, 119-21, 128, 145); (8) Balentine's siblings demonstrated learning disabilities that were not properly addressed (Am. Pet. at 114); (9) Balentine suffered from emotional problems, such as inappropriate emotions, a strange sense of humor, sudden unexplained panic, seeing ghosts, and believing that the ghost of his father sometimes inhabited his body (Am. Pet. at 114-15, 119-21, 122); (10) Balentine's family distrusted official authority, such as the police, whom they regarded as racist and unhelpful, and his family frequently took the law into their own

hands to deal with crimes rather than reporting anything to the police (Am. Pet. at 115); and (11)

Balentine developed an exaggerated sense of justice and desire to deal with perceived injustices

(Am. Pet. at 115).  Petitioner contends there was mitigation evidence regarding the threats that

precipitated these murders that he claims were not adequately investigated and presented to the jury.

(Am. Pet. at 116).

In addition to the classic mitigation elements identified above, petitioner contends there was

positive character evidence available that was not presented at his trial, such as (1) petitioner's

skills as a mechanic and handy-man, which he used to help others without compensation (Am. Pet.

at 115, 118, 124), (2) his friendly nature, good sense of humor, and kindheartedness towards others

(Am. Pet. at 116, 122, 145), (3) his respectfulness towards others (Am. Pet. at 116, 118, 124, 145),

(4) his honesty (Am. Pet. at 118), and (5) his good conduct in class.  (Am. Pet at 116, 118, 121,

145).

Prior to addressing the particulars of ground seven, ground eight will be outlined and the

merits of grounds seven and eight will be discussed jointly.

## G.
### Ground Eight

Similar to ground seven, petitioner's eighth ground asserts his Eighth and Fourteenth

Amendment rights to individualized sentencing under this same doctrine were violated because trial

counsel failed to present any mitigating and risk-assessment evidence at trial.  (Am. Pet. at 137-

151).  Petitioner complains trial counsel failed to investigate and develop any mitigation or risk-

assessment evidence.  Petitioner specifically cites counsel's (1) failure to request funding for

forensic experts on risk assessment and mitigation, (2) waiting until the eve of trial and failing to

request a continuance to allow their trial "mitigation investigator" time to investigate, (3) failure to

conduct a proper voir dire of the venire regarding the ability of each prospective juror to consider

mitigation and risk-assessment evidence, and (4) failure to rebut the aggravating evidence and

present mitigation and risk-assessment evidence during the punishment phase of his trial (Am. Pet.

at 137, 140-49), in support of this ground.  Petitioner contends his trial counsel could have

discovered this mitigating evidence with modest research and investigation with the help of a

qualified mental health professional.  (Am. Pet. at 130).  Petitioner further contends trial counsel's

failure to investigate deprived him of risk-assessment evidence that would have benefitted his case

on the issue of future dangerousness.  (Am. Pet. at 130-35, 145-46).  As a result of these multiple

failures, petitioner claims he was deprived of critical evidence that would have benefitted his case at

the punishment phase of his trial, rendering his death sentence unreliable, and raising a reasonable

probability the outcome of the case would have been different.  (Am. Pet. at 135, 137, 150).

     Although this claim (ground eight) is asserted under the Eighth and Fourteenth

Amendments, such provisions do not govern claims of ineffective assistance of counsel.  The Sixth

Amendment guarantees a defendant the right to the effective assistance of counsel.  U.S. CONST.

Amend. VI.  The two-pronged standard by which a claim of ineffective assistance of counsel is

measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80

L.Ed.2d 674 (1984).  The first prong of *Strickland* requires the defendant to show that counsel's

performance was deficient.  *Strickland*, 466 U.S. at 698.  The second prong of this test requires the

defendant to show prejudice by demonstrating that there is a reasonable probability that, but for

counsel's deficient performance, the result of the proceeding would have been different.  *Id*. at 694.

The court need not address both prongs of the *Strickland* standard if the complainant has made an

insufficient showing on one.  *Strickland*, 466 U.S. at 697.

<u>Analysis of Grounds Seven and Eight</u>

Petitioner's seventh ground focuses on the lack of any mitigation or risk-assessment evidence and his eighth claim focuses on trial counsel's failure to investigate and present mitigating and risk-assessment evidence in the punishment phase of his trial. Before this Court could adequately address the underlying merits of this claim, the Court would have to look to the "norms of adequate investigation in preparing for the sentencing phase of a capital trial, when defense counsel's job is to counter the State's evidence of aggravated culpability with evidence in mitigation." *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005). Mitigating evidence can be critically important in a death penalty case. *See Moore v. Johnson,* 194 F.3d 586, 612 (5th Cir.1999) (citing *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982)). Trial counsel defending a death penalty case has an "obligation to conduct a thorough investigation of the defendant's background." *[Terry] Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000) (citing ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980)), which "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Guidelines 11.4.1(C), p. 93 (1989) (emphasis added by Supreme Court).

No mitigation evidence concerning petitioner's background, childhood, or family was presented at his trial, and trial counsel called no witnesses at the punishment phase. (26 RR at 80). Other than the criminal history from the prosecution, petitioner's counsel presented no facts about petitioner's background, childhood, or family to the jury. While this omission, if in fact it was an omission, presents a substantial question, it does not necessarily compel a finding of deficient

performance if counsel's actions were based upon a reasonable tactical decision. *See Darden v. Wainwright*, 477 U.S. 168, 185-87, 106 S.Ct. 2464, 2473-74, 91 L.Ed.2d 144 (1986) (not presenting mitigation case was reasonable tactical decision in view of fact that evidence in question would have opened the door for rebuttal evidence from the state). A decision to not present mitigating evidence may be reasonable if based upon "evidence in their investigation to suggest that a mitigation case, in its own right, would have been counterproductive, or that further investigation would have been fruitless." *Wiggins*, 539 U.S. at 525, 123 S.Ct. at 2537.

The facts of this case are rather heinous, and show a triple murder was committed while the victims were apparently asleep. The defense at trial was that, notwithstanding his confession, there was a reasonable doubt petitioner committed the murders. Secondly, the defense attempted to show the acts of violence directed toward victim Mark Caylor were in response to threats made against petitioner. Even if this defensive argument, or combination thereof, did not warrant acquittal, trial counsel may have determined it was petitioner's best chance to avoid the death penalty. The fact that trial counsel may have determined the defense outlined above to be petitioner's best defense would not, however, justify a failure to investigate and obtain all available mitigation evidence. Indeed, before counsel could make a decision as to whether mitigation evidence should be offered, counsel would have to know what evidence there was. The record before this Court does not reflect the extent of trial counsel's investigation or knowledge of mitigation evidence at the time of trial. We only know none was presented. Therefore, a review of the merits of this claim would require this Court to allow further discovery, and/or hold an evidentiary hearing to hear testimony from trial counsel and defense investigators regarding the extent of the defense investigation in preparation for the punishment phase of petitioner's trial, whether any mitigation evidence was obtained, and, if so, why it was not presented. (Am. Pet. at 154-55). Such additional discovery and an evidentiary

hearing are not warranted, and, in fact, are prohibited by Fifth Circuit precedent because the claims asserted in grounds seven and eight are unexhausted and procedurally barred. Further, even if this claim were not unexhausted, this Court should not hold an evidentiary hearing when a habeas petitioner has failed to diligently develop the factual basis for his claim in state court. *See* 28 U.S.C. § 2254(e)(2); *Conner v. Quarterman*, 477 F.3d 287 (5th Cir. 2007) (holding that the district court improperly held an evidentiary hearing on an exhausted claim because the habeas petitioner had not diligently developed the factual basis for his claim in the state court proceedings).

## Exhaustion

Neither petitioner's seventh nor eighth claims were presented to the state courts. Petitioner does not contend otherwise. Instead, he relies upon the arguments previously outlined to excuse his failure to exhaust and which this Court has earlier found insufficient. (Am. Pet. at 135-36, 150-51). Even so, this Court has again conducted an independent review of the record to determine whether either of these claims could be considered exhausted.

While he does not rely upon it in attempting to satisfy the exhaustion requirement, petitioner did make a somewhat similar ineffective assistance of counsel claim in the state post-conviction habeas corpus proceeding. His twentieth ground for state habeas corpus relief alleged he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments because of trial counsel's failure to call any punishment witnesses whatsoever. (*See* SHR at 127). However, even if this Court were to now construe one of petitioner's current Eighth and Fourteenth Amendment claims as alleging the same legal theory as did his prior Sixth Amendment complaint presented to the state courts, it would still not satisfy the exhaustion requirement that petitioner "must have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson*, 127

F.3d. 409, 420 (5th Cir. 1997); *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003).

The Fifth Circuit Court of Appeals has consistently held that a "petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court." *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996). Dismissal for failure to exhaust is not required "when evidence presented for the first time in a habeas proceeding *supplements,* but does not *fundamentally alter,* the claim presented to the state courts." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2006) (citing *Anderson*, 338 F.3d at 386-87) (emphasis in original). Whether the additional evidence presented in a federal proceeding merely supplements a claim or whether it fundamentally alters the claim such as to render it unexhausted is determined on a case by case basis. *See Morris*, 413 F.32d at 491. "[A]lthough a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court," evidence that "places the claims in a significantly different legal posture must first be presented to the state courts." *Anderson*, 338 F.3d at 387.

In this case the question is not close. None of the mitigation or risk-assessment evidence presented in this federal petition was even referenced in the one-page argument for relief contained in the state petition, which merely alleged "trial counsel had a duty to personalize Applicant as much as possible, either through presenting evidence regarding his life; and if that wasn't legally viable then a duty to present a picture of what life would be like for a prisoner serving a life sentence." (SHR at 127). This allegation did nothing to inform the state court of the existence or nature of any specific mitigation or risk-assessment evidence that could have been presented at his trial. In fact, petitioner alternatively suggested to the state court that such course of action may not have been "legally viable," and then merely pointed out in his state petition that his trial counsel requested no expert assistance and "no evidence was presented even when an ex chairman of the

prison board was available in town as well as a practitioner of this [state] court." *Id*. Since none of the mitigation evidence alleged in his federal petition was presented to the state court in any form, the ineffective assistance claims presented federally are clearly fundamentally different claims and could not be considered exhausted even if the Court were to find the same legal theory had been alleged during state habeas proceedings.[8]

Therefore, petitioner properly did not attempt to rely upon that state pleading to show exhaustion. Petitioner has not provided sufficient excuse for his failure to exhaust these claims, and he would not now be entitled to make either of them in a successive state habeas petition. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Accordingly, petitioner's seventh and eighth claims are both unexhausted and procedurally barred.

H.
<u>Ground Nine</u>

In his ninth ground, petitioner argues the cumulative effect of the constitutional violations he has presented resulted in an unfair trial and denial of due process as guaranteed by the Fourteenth Amendment. Respondent counters that this claim includes and relies upon unexhausted claims, rendering it unexhausted. This Court agrees. This claim relies entirely upon claims that are either unexhausted and now procedurally barred, barred by the non-retroactivity doctrine, or not cognizable in federal habeas review. Therefore, none of the claims are available to be cumulated. Petitioner asserts no other reason to find this claim is itself exhausted or that any reason exists to excuse him from any procedural default barring this claim from federal habeas corpus review. *See Beazley*, 242 F.3d at 264*; Stokes*, 123 F.3d at 860*; Edwards*, 120 S.Ct. at 1591. Therefore,

---

[8]The mitigation evidence outlined previously was developed by federal habeas counsel, not state habeas counsel. Consequently, it could not have been presented to the state courts.

petitioner's ninth claim is also unexhausted and procedurally barred.

## VI.
## REQUEST FOR DISCOVERY AND AN EVIDENTIARY HEARING

Petitioner requested discovery and an evidentiary hearing, including an evidentiary hearing on his asserted justification for non-exhaustion. (Am. Pet. at 154-55, Doc. 27, Mot. Ev. Hrg., Doc. 45; Post-Hrg. brief, Doc. 51). When the pleadings demonstrate a factual dispute which, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded him a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing. *See Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999). However, "[e]videntiary hearings in federal habeas proceedings are governed by 28 U.S.C. § 2254(e)(2), which states that if an applicant has failed to develop the factual basis of his claim in state court proceedings, a federal court should not hold an evidentiary hearing on the claim." *Conner*, 477 F.3d at 293. The only factual disputes presented in this case pertain to claims dependent upon evidence that was not developed in the state court proceedings and which are now also unexhausted and procedurally barred, or which attack the sufficiency of the state habeas process providing counsel in death penalty cases in order to overcome such procedural bar. However, this Court is bound by precedent establishing that ineffective assistance of state habeas counsel in any form may not be used to excuse a failure to exhaust state remedies. *See Nenno v. Quarterman*, 489 F.3d 217. Since the pleadings demonstrate there is no factual dispute upon which federal habeas corpus relief can be granted, no further discovery or evidentiary hearing is warranted.[9]

---

[9]Petitioner argues any ruling by this Court or any appellate federal court would be a sham (*See* Petitioner's Supplement to Amended Habeas Petition at p. 16), unless an evidentiary hearing on the adequacy of the state habeas system is held. While the undersigned does not agree with that analysis, it is a fact that the consequences of application of the procedural bar are indeed severe. Application of the procedural bar will result in petitioner's ineffective assistance claims relating to the failure of counsel to offer mitigation evidence, never being addressed by any court, state or federal. Grounds seven and eight, the "mitigation

# VII.
## CONCLUSION

Grounds one and two are governed by the *Stone v. Powell* rule, and ground six is without merit. The remainder of petitioner's grounds are unexhausted and procedurally barred.[10] Petitioner's contention that the systemic inadequacy of state habeas review and lack of safeguards to ensure a defendant sentenced to death receives effective representation during state habeas proceedings constitutes adequate cause to avoid application of the procedural default has been effectively presented in his amended petition with additional arguments and facts presented at oral argument and in his post-argument brief. Petitioner presents a compelling case for improvement of capital habeas review. In the final analysis, however, petitioner cannot show the state habeas system never works nor can he show that there is no state corrective process whatsoever. Many death row prisoners have their claims fully and effectively presented during state habeas review. Consequently, while petitioner labels his attack as one directed at the overall inadequacy of the state habeas system, the lynchpin of his argument is that it permits incompetent and/or ineffective counsel to be appointed on state habeas review and that this constitutes a denial of due process. This simply is another method of alleging ineffective assistance of state habeas counsel, and petitioner cannot overcome the overwhelming precedent applicable to this argument.

Any relief to be granted or any deviation from this established precedent must occur at the

---

grounds," are, in the opinion of the undersigned, petitioner's strongest grounds. This is not to say petitioner would necessarily prevail on the merits of these grounds, only that the merits will not be adjudicated. After an evidentiary hearing, it might be determined that trial counsel conducted an adequate mitigation investigation and determined no mitigation evidence should be offered. It also could be determined, however, that there was an inadequate mitigation investigation which would result in a determination that petitioner's Sixth Amendment right to the effective assistance of counsel was violated. The merits of this issue will not be decided due to the procedural bar.

[10]Although this Report and Recommendation is quite lengthy, the recommended decision is actually these two sentences.

appellate court level.

## VIII.
## RECOMMENDATION

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Stone v. Powell* bars relief on grounds one and two. The state court adjudication of ground six on the merits neither resulted in a decision that was contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Grounds three, four, five, seven, eight, and nine are unexhausted and procedurally barred. Petitioner's petition for a writ of habeas corpus should be DENIED.

## IX.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>27th</u> day of September 2007.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).