# United States Court of Appeals
## for the Fifth Circuit

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 8 2021

CLERK, U.S. DISTRICT COURT
By_____ Deputy

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2021

Lyle W. Cayce
Clerk

No. 18-70035

JOHN LEZELL BALENTINE,

*Petitioner—Appellant,*

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:03-CV-39

---

Before OWEN, *Chief Judge*, and ELROD and DUNCAN, *Circuit Judges*.
PER CURIAM:*

John Balentine was convicted and sentenced to death for killing three teenagers while they slept. In the district court, Balentine filed a Rule 60(b) motion to reopen the 2008 final judgment that denied him federal habeas relief under 28 U.S.C. § 2254. The district court determined that Balentine's

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 18-70035

case did not present extraordinary circumstances that warrant relief under Rule 60(b) and that the exception to a procedural bar under *Martinez v. Ryan*, 566 U.S. 1 (2012) did not apply to Balentine's claim. We AFFIRM the district court's judgment.

I.

In 1998, John Balentine walked to the Amarillo home he used to share with his ex-girlfriend, and, once inside, shot and killed three teenagers. Two of them, he did not recognize. The other was Balentine's ex-girlfriend's brother, who had allegedly previously threatened to assault or kill Balentine over Balentine's treatment of his sister.[1] Balentine shot each victim in the head while they were asleep. Balentine, who was then thirty, was convicted of capital murder and sentenced to death the following year. *State v. Balentine*, No. 39,532-D, 1999 WL 34866401, (320th Dist. Ct., Potter Cnty., Tex. Apr. 21, 1999).

No mitigation evidence concerning Balentine's background, childhood, or family was presented at trial, and no witnesses were called by the defense at the punishment phase. The Texas Court of Criminal Appeals affirmed Balentine's conviction and sentence on direct appeal. *Balentine v.*

---

[1] Balentine states in his brief that "prior to the murders, Balentine, a black man, had been involved in a dispute with one of the victims, all of whom were white, who had threatened to kill him and went with others looking for him on more than one occasion. The dispute grew ugly, with one resorting to racial epithets and taunts. The victim went as far as to leave a note referencing the KKK attached to the front door of where [Balentine] was staying as a warning to [Balentine]." The record bears out some but not all of these statements. For instance, the victim described in Balentine's brief, who was the brother of Balentine's ex-girlfriend, was white and there was testimony he made a threat in which he referred to Balentine, who is black, using a racial slur. According to Balentine's brief, Balentine may also have believed that the brother left a threatening sign referencing the Ku Klux Klan on his door. However, trial testimony revealed that a different relative of Balentine's ex-girlfriend made the sign and the brother had no role in it. Balentine does not argue on appeal that there was error regarding this evidence.

No. 18-70035

*State*, 71 S.W.3d 763, 774 (Tex. Crim. App. 2002). Balentine did not petition the Supreme Court for certiorari. Instead, he filed a state habeas application in which he raised twenty-one grounds for relief, including that he was denied the effective assistance of counsel because his attorney failed to adequately investigate and present mitigation evidence. Balentine's application was denied. *Ex parte Balentine*, No. WR-54,071-01 (Tex. Crim. App. Dec. 4, 2002) (not designated for publication).

Balentine filed an amended federal petition for writ of habeas corpus in 2004. He argued that his Eighth and Fourteenth Amendment rights to individualized sentencing under the *Lockett* doctrine, *see Lockett v. Ohio*, 438 U.S. 586 (1978),[2] were violated because his trial counsel failed to present any mitigating and risk-assessment evidence at trial.[3] In support, Balentine relied upon arguments and evidence, such as affidavits from family members and experts, that were not presented to the state court. As such, the State argued that his claim was unexhausted and procedurally barred, and the federal district court heard oral argument on that point.

The district court concluded that Balentine's mitigation claim was unexhausted and did not constitute cause to excuse the default of the

---

[2] *Lockett* held unconstitutional an Ohio death penalty statute that did not permit the type of individualized consideration of mitigating factors—such as a defendant's character and record—that the Court deemed required by the Eighth and Fourteenth Amendments. *Lockett*, 438 U.S. at 606.

[3] The district court ultimately construed this *Lockett* claim as one asserting a violation of Balentine's Sixth Amendment right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 698 (1984), because the Eighth and Fourteenth Amendments do not govern claims of ineffective assistance of counsel. *See Balentine v. Quarterman*, No. 2:03-CV-39, 2008 WL 862992, at *18 (N.D. Tex. Mar. 31, 2008). Although Balentine, in his original state habeas proceeding, claimed that he was denied the effective assistance of counsel under the Sixth Amendment because of his trial counsel's failure to call any mitigation witnesses, he did not rely upon that ground in his later federal habeas petition.

3

exhaustion requirement. *Balentine v. Quarterman*, No. 2:03-CV-39, 2008 WL 862992, at *20 (N.D. Tex. Mar. 31, 2008).[4] The district court then denied Balentine a certificate of appealability on this issue. *Balentine v. Quarterman*, No. 2:03-CV-39, 2008 WL 2246456, at *3 (N.D. Tex. May 30, 2008) (concluding that trial counsel's failure to investigate and present mitigation evidence "does not allow the federal court to avoid the exhaustion requirement or excuse the procedural bar") (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) and *Martinez v. Johnson*, 255 F.3d 229, 240–41 (5th Cir. 2001)).    This court subsequently denied Balentine a certificate of appealability on this issue for the same reason. *Balentine v. Quarterman*, 324 F. App'x 304, 306 (5th Cir.), *cert. denied*, 558 U.S. 971 (2009).

In 2009, the state court set Balentine's execution for September 30, 2009. *State v. Balentine*, No. 39,532-D (320th Dist. Ct., Potter Cnty., Tex. June 22, 2009). Balentine then filed a motion for stay of execution along with a second (or first subsequent) habeas application in state court, again raising his ineffective-assistance-of-counsel claim but this time supported by exhibits developed during the federal habeas proceedings. *Ex parte Balentine*, Nos. WR-54071-01, WR-54071-02, 2009 WL 3042425, at *1 (Tex. Crim. App.

---

[4] The court did note that even if it were to credit Balentine's Eighth and Fourteenth Amendment claims as alleging the same legal theory as his prior Sixth Amendment claim (the one that he chose not to rely upon in his federal habeas proceeding), Balentine would still not satisfy the exhaustion requirement. *Balentine*, 2008 WL 862992, at *20. That is because the additional evidence Balentine introduced at the federal proceeding was never presented to the state court or referenced in the one-page argument for relief contained in his state petition—the two claims presented were thus fundamentally different. *Id.*; *see Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (explaining that dismissal for failure to exhaust is not required "when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts" (quoting *Anderson v. Johnson*, 338 F.3d 382, 386–87 (5th Cir. 2003)); *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) ("[A] habeas petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court.").

Sept. 22, 2009) (not designated for publication). The Court of Criminal Appeals dismissed Balentine's application under Article 11.071 § 5 of the Texas Code of Criminal Procedure and denied his motion for stay of his execution. *Id.*

Balentine then filed his first Rule 60(b) motion (along with another motion for stay of execution) in federal district court, contending that the Court of Criminal Appeals ruling undermined the conclusion that his ineffective-assistance-of-counsel claim was procedurally barred. *Balentine v. Thaler*, No. 2:03-CV-39, 2009 WL 10673148, at *1 (N.D. Tex. Sept. 28, 2009). The district court denied relief, holding that the Court of Criminal Appeals ruling was based on independent and adequate state-law grounds, did not consider or rule on the merits, and did not open the claim to federal habeas review. *Id.* at *3. The district court did, however, grant Balentine's application for a certificate of appealability. *Balentine v. Thaler*, No. 2:03-CV-39, 2009 WL 10710124, at *1 (N.D. Tex. Sept. 28, 2009). The Fifth Circuit originally disagreed and granted Balentine's stay of execution (denied by the district court) and reversed the denial of Rule 60(b) relief. *Balentine v. Thaler*, 609 F.3d 729, 738 (5th Cir.) (determining that prior Fifth Circuit precedent compelled it "to construe the . . . Court of Criminal Appeals ruling as one on federal grounds, because it was not clearly based on an adequate state ground independent of the merits"), *withdrawn*, 626 F.3d 842 (5th Cir. 2010).

This court then substituted a new opinion that affirmed the district court's denial of Balentine's Rule 60(b) motion and held that the Court of Criminal Appeals denial of Balentine's subsequent application *was* based upon independent and adequate state procedural grounds. *See Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010). A petition for rehearing *en banc* was denied, *Balentine v. Thaler*, 629 F.3d 470 (5th Cir. 2010), as was a petition for writ of certiorari, *Balentine v. Thaler*, 564 U.S. 1006 (2011).

5

No. 18-70035

The state court set another execution date for June 15, 2011. On June 13, Balentine moved to stay his impending execution and filed a third state habeas application (second subsequent application), which again presented his claim that trial counsel failed to conduct an adequate investigation in his initial state habeas application. The Court of Criminal Appeals denied his request for a stay and dismissed his application. *Ex parte Balentine*, No. WR-54,071-03, 2011 WL 13213991, at *1 (Tex. Crim. App. June 14, 2011) (not designated for publication). Balentine filed a petition for writ of certiorari, along with a motion for stay of execution. The Supreme Court granted the motion for stay, *Balentine v. Texas*, 564 U.S. 1014 (2011), which expired on the denial of certiorari, *Balentine v. Texas*, 566 U.S. 904 (2012).

The state court then set another execution date for August 22, 2012. On July 12, 2012, Balentine filed another Rule 60(b) motion in the federal district court, claiming that *Martinez v. Ryan*, 566 U.S. 1 (2012),[5] excused the procedural default of his ineffective-assistance claim. The district court denied Balentine's motion but granted a certificate of appealability. *Balentine v. Thaler*, No. 2:03-CV-39, 2012 WL 3263908, at *1 (N.D. Tex. Aug. 10, 2012) ("[B]inding circuit precedent has determined that the exception created in *Martinez* does not apply to this case."). The Fifth Circuit affirmed the district court. *Balentine v. Thaler*, No. 12-70023, slip op. at 6 (5th Cir. Aug. 17, 2012) (unpublished), *supplemented*, 692 F.3d 357 (5th Cir. 2012). Balentine's motion for rehearing *en banc* was denied. *Balentine v. Thaler*, 692 F.3d 357 (5th Cir. 2012). The Supreme Court, however, granted Balentine's certiorari petition, vacated the judgment, and remanded the case to this court

---

[5] The Court in *Martinez* stated that it was qualifying *Coleman v. Thompson*, 501 U.S. 722 (1991) by "recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9.

for further consideration in light of *Trevino v. Thaler*, 569 U.S. 413 (2013).[6] *Balentine v. Thaler*, 569 U.S. 1014 (2013). This court in turn remanded the case to the district court to "conduct further proceedings consistent with the Supreme Court's ruling in *Trevino*." *Balentine v. Stephens*, 553 F. App'x 424, 425 (5th Cir. 2014).

Following the Fifth Circuit's remand with instructions, the district court held an evidentiary hearing "for the purpose of examining the exception to procedural bar," which necessarily included the presentation of evidence relating to the merits of Balentine's underlying ineffective-assistance claim. *Balentine v. Stephens*, No. 2:03-CV-39, 2016 WL 1322435, at *4 (N.D. Tex. Apr. 1, 2016). Following the hearing, the magistrate judge recommended that Rule 60(b) relief be denied because "Balentine's claim has no merit and does not come within the *Martinez* exception to procedural bar." *Balentine v. Davis*, No. 2:03-CV-39, 2017 WL 9470540, at *16 (N.D. Tex. Sept. 29, 2017). The district court adopted the magistrate judge's recommendation and denied Balentine a COA. *Balentine v. Davis*, No. 2:03-CV-39, 2018 WL 2298987, at *1 (N.D. Tex. May 21, 2018).

Balentine moved for a COA from this court to appeal the district court's denial of his Rule 60(b) motion. Based on the limited, threshold inquiry appropriate at the COA stage, this panel granted Balentine's motion for a COA, and the appeal is before us now.

---

[6] *Trevino* applied *Martinez*'s narrow exception to situations in which a state's procedural framework (like that found in Texas) "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 569 U.S. at 429.

## II.

Federal Rule of Civil Procedure 60(b)(6) is a general, catch-all provision that authorizes a district court to equitably relieve a party from a final judgment, order, or proceeding for specific, enumerated reasons or for "any other reason that justifies relief." Although described as a "grand reservoir of equitable power to do justice," *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010) (quotation omitted), the Fifth Circuit has "narrowly circumscribed its availability." *Balentine v. Thaler*, 626 F.3d at 846 (quoting *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995)). "Only if extraordinary circumstances are present" will Rule 60(b)(6) relief be granted. *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990). Such "extraordinary circumstances," however, "will rarely occur in the habeas context." *Gonzales v. Crosby*, 545 U.S. 524, 535 (2005). A "change in decisional law after entry of judgment does not constitute [extraordinary] circumstances and is not alone grounds for relief from a final judgment." *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) (quoting *Bailey*, 894 F.2d at 160). This court reviews the denial of a Rule 60(b) motion under an abuse of discretion standard. *See Rocha*, 619 F.3d at 400.

Federal review of a procedurally barred claim is permitted when the petitioner is able to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."[7] *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (quoting *Coleman*, 501 U.S. at 750). The

---

[7] In addition, review on the merits is permitted if the petitioner can "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Hughes*, 530 F.3d at 341 (quoting *Coleman*, 501 U.S. at 735). This exception is limited to cases in which the petitioner can show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Balentine does not argue that he is actually innocent. We therefore do not address this exception to procedural default.

No. 18-70035

Supreme Court expanded this cause exception in *Martinez v. Ryan*, 566 U.S.
1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013). *See Adams*, 679 F.3d at
319 ("The Supreme Court's later decision in *Martinez*, which creates a
narrow exception to *Coleman*'s holding regarding cause to excuse procedural
default, does not constitute an 'extraordinary circumstance' under Supreme
Court and our precedent to warrant Rule 60(b)(6) relief.").

Where, as in Texas, the state procedural framework makes it highly
unlikely that a defendant will have a meaningful opportunity to raise on direct
appeal a claim of ineffective assistance of trial counsel, a "procedural default
will not bar a federal habeas court from hearing a substantial claim of
ineffective assistance at trial if, in the initial-review collateral proceeding . . .
counsel in that proceeding was ineffective." *Trevino*, 569 U.S. at 429
(quoting *Martinez*, 566 U.S. at 17). "Therefore, to succeed in establishing
cause, the petitioner must show (1) that his claim of ineffective assistance of
counsel at trial is substantial—i.e., has some merit[8]—and (2) that habeas
counsel was ineffective in failing to present those claims in his first state
habeas proceeding." *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013)
(citing *Martinez*, 566 U.S. at 14); *see also Buck v. Davis*, 137 S. Ct. 759, 779–
80 (2017) ("[A] claim of ineffective assistance of trial counsel defaulted in a
Texas postconviction proceeding may be reviewed in federal court if state
habeas counsel was constitutionally ineffective in failing to raise it, and the

---

[8] Balentine argues that "[i]n granting [a] [certificate of appealability], this Court
necessarily found that the [ineffective-assistance-of-counsel] claim was a substantial claim,
in that it had some merit." However, as our decision granting Balentine's certificate of
appealability made clear, this panel conducted a limited, threshold inquiry at that stage, and
the panel is not bound by any observations on the merits in the opinion granting a certificate
of appealability. *Balentine v. Davis*, No. 18-70035 (5th Cir. Feb. 26, 2020). *See also Trevino*,
861 F.3d at 548.

claim has 'some merit.'" (quoting *Martinez*, 566 U.S. at 14)). To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### III.

Balentine appeals the denial of his motion to reopen the final judgment under Federal Rule of Civil Procedure 60(b), arguing that the exception to a procedural bar in *Martinez* in combination with the merits of his ineffective assistance of counsel claim and his diligence in pursuing his claim warranted 60(b) relief. The district court denied Balentine's Rule 60(b)(6) motion, ruling that his ineffective assistance of counsel claim has no merit and thus does not come within the *Martinez* exception to procedural bar. We affirm on this reasoning.[9]

### A.

The district court concluded that Balentine's ineffective-assistance claim lacked merit because Balentine's attorney testified that Balentine

---

[9] We treat Balentine's claim as unexhausted. The State makes an alternative argument that Balentine's claim is not new but rather one he already presented in the Texas Court of Criminal Appeals, in which case 28 U.S.C. § 2254(d)(1) would bar the consideration of new evidence. However, we do not find it necessary to reach this argument. In addition, we do not reach the State's argument that 28 U.S.C. § 2254(e)(2) would bar this court's consideration of the evidence presented at the federal evidentiary hearing if Balentine had overcome the default of his ineffective assistance claim. As discussed by the parties' 28(j) briefs, the effect of Section 2254(e)(2) is an issue in two cases in which the Supreme Court has recently granted certiorari, *Jones v. Shinn*, 943 F.3d 1211 (9th Cir. 2019) and *Ramirez v. Ryan*, 937 F.3d 1230 (9th Cir. 2019). *See Shinn v. Ramirez*, No. 20-1009, 2021 WL 1951793 (May 17, 2021) (granting certiorari in both cases). Because we do not reach this Section 2254(e)(2) issue in this case, we do not need to wait for Supreme Court's ruling in these cases. We affirm on the district court's reasoning: Balentine has not shown his ineffective assistance claim is substantial, and he cannot overcome the procedural default.

himself instructed his attorneys *not* to present mitigation evidence. *Balentine*, 2017 WL 9470540, at *7. As our precedent establishes, "[i]f a defendant instructs his attorney not to present mitigation evidence, the failure to present this evidence does not give rise to a *Strickland* claim." *Shore v. Davis*, 845 F.3d 627, 633 (5th Cir. 2017).

Balentine disputes the "nature and context" of his instruction and whether that instruction was "knowing and informed." However, the evidence presented at the evidentiary hearing forecloses his arguments and supports the district court's ruling.

### 1. *Nature and Context of Instruction*

At the evidentiary hearing ordered by the district court, one of Balentine's trial attorneys, Paul Herrmann, testified that his "punishment" strategy entailed making the case as difficult as possible for the State so as to secure an offer for a life sentence. That "was the best-case scenario." Herrmann testified that this strategy was discussed with Balentine from the beginning and that Balentine never expressed any discomfort or opposition to the plan.

The plan worked: the defense succeeded in getting an offer from the State to drop the death penalty to a life sentence in exchange for a guilty plea. But Balentine rejected it. One of his trial attorneys, Randall Sherrod, testified about the conversation he had with Balentine after the latter refused the offer:

> And [Balentine] told me, he said, "With my background and the fact that I killed three Aryan Nation kids, they're going to try to stick a shiv in me every day." And he basically told me that he would rather be on death row where he wouldn't have to worry about that, and he said something to the effect of, "Who in the hell wants to spend their life until they're fifty or sixty years old in the penitentiary?" And he said, "I want the death penalty."

No. 18-70035

> And then I walked up and talked to [co-counsel, who]
> said, "Well, did he change his mind?" And I said, "No, but he
> convinced me, if I were in his shoes, that's the same thing I
> would do."

That attorney further testified that during the same conversation, Balentine instructed him not to call any punishment witnesses. And when the attorney approached the subject of mitigation with Balentine at the conclusion of the State's case on punishment—to see if he had changed his mind about putting on punishment witnesses—Balentine informed his counsel that he did not want to put on any more witnesses. The district court thus found that although defense counsel had trial witnesses available to testify at the punishment stage, Balentine told them not to call any punishment witnesses because he did not want a life sentence. *Balentine*, 2017 WL 9470540, at *7. As a result, his complaint against trial counsel for failing to present mitigation witnesses at the punishment stage of his trial was foreclosed. *Id.* at *12.

Balentine argued in the district court and argues here on appeal that the testimony of Balentine's attorney concerning the nature and context of the instruction should not be believed because the attorney: (1) argued for a life sentence to the jury during closing argument—despite Balentine's supposed instruction not to call mitigation witnesses; (2) failed to make a record at trial of Balentine's instruction; (3) did not inform any other lawyer or investigator who could corroborate the instruction; and (4) made no notes concerning the waiver in his file.

Balentine contends that his instruction was motivated not by a preference for seeking the death penalty but by his acquiescence to the fatalistic judgment of his counsel that the punishment witnesses they had available would not be enough to obtain a life sentence. He argues that he turned down the State's offer of life because he thought he had a chance for acquittal and that his later instruction not to present mitigation witnesses, if

such an instruction was given in the first place, was not due to his preference for death but was instead a result of his counsel's pessimism and lack of preparation with respect to mitigation witnesses.

However, the evidence presented at the evidentiary hearing supports the district court's findings. First, Balentine's attorney testified as to the reason why he argued for a life sentence during closing argument: he was a death penalty opponent and saw a difference between presenting witnesses against his client's instructions and making an argument of his own without consulting his client. Second, binding circuit authority holds that the district court is not prevented from considering a defendant's instructions to his counsel just because the defendant's instructions were not reflected on the record. *See Shore*, 845 F.3d at 632. Third, the district court found that the attorney to whom Balentine shared his preference for the death penalty immediately reported that explanation to his co-counsel, and the investigator working on the case similarly testified that Balentine had instructed counsel not to call available witnesses at the punishment stage. *Balentine*, 2017 WL 9470540, at *8–9. Fourth, the district court concluded that the lack of notes "does not prove that no such instructions were given. The evidence before this Court supports the fact that such instructions were made and followed. Balentine has not shown the absence of notes disproves [his attorney's] testimony." *Id.* at *9 (citations omitted).

Finally, in response to Balentine's alternate explanation for why he rejected the guilty plea and instructed his counsel not to present mitigation witnesses, the district court determined that his "currently asserted reasoning for not calling punishment witnesses is in conflict with his trial decision to reject an offer of life imprisonment." *Id.* at *11. The district court dismissed Balentine's argument that he thought he had a chance of acquittal, given there was no evidence that he did have such a belief. *Id.* Once the defense was unsuccessful in challenging Balentine's confession, he

effectively faced two outcomes: life in prison or the death penalty. *Id.* The district court found credible Balentine's trial counsel's testimony that Balentine expressed a preference of death row to a sentence of life in prison in the general population. *Id.* at *8.

The district court noted that Balentine was not necessarily expressing a desire to be immediately executed but rather comparing the anticipated quality of life he would have in prison with a life sentence versus a death sentence. *Id.* at *11 n.5. That is, the court viewed Balentine's choice as a preference for solitary confinement on death row—where he would wait for however long it would take for his state and federal appeals to conclude—over the general population, where he believed he would be in constant fear of reprisals from white supremacist prison gangs into his old age. *Id.* The court concluded that "[t]his does not necessarily appear to be an unreasonable choice under the circumstances presented." *Id.*

In short, the district court found that Balentine instructed counsel to not call the available punishment witnesses because he did not want a life sentence. The district court's finding aligns with Balentine's trial counsel's testimony that Balentine stated he wanted the death penalty and the evidence that Balentine instructed counsel not to present mitigation witnesses *after* having been found guilty. We hold that the district court's finding that Balentine preferred a death sentence over a sentence of life in prison was not clearly erroneous. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400–01 (1990) (noting that even "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985))).

As the district court held, this finding forecloses Balentine's complaint against his trial counsel for failing to present mitigation witnesses at the punishment stage of his trial, *Shore*, 845 F.3d at 633, or failing to

adequately investigate mitigation evidence. *Schriro v. Landrigan*, 550 U.S. 465, 475–76 (2007). If a defendant instructs his attorney not to present mitigation evidence, the failure to present this evidence does not give rise to a *Strickland* claim. *See Shore*, 845 F.3d at 633 ("A defendant cannot raise a *Strickland* claim based on counsel's compliance with his instructions."); *United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990) ("[A defendant cannot] avoid conviction on the ground that his lawyer did exactly what he asked him to do."); *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can [a defendant] block his lawyer's efforts and later claim the resulting performance was constitutionally deficient.").

### 2. *Knowing and Informed Instruction*

Balentine also challenges his instruction to counsel not to present mitigation evidence on the ground that any instruction must be knowing and informed. He contends that he was not informed of the evidence that would have been available but for counsel's deficient investigation.

The district court concluded that this argument was foreclosed by our decision in *Shore*. *Balentine*, 2017 WL 9470540, at *10. In *Shore*, this court rejected an inmate's argument that his waiver of the right to present mitigation evidence was invalid because he could not have knowingly waived that right when he was not aware of the evidence available. 845 F.3d at 632. The court explained that the imposition of an informed and knowing requirement would impermissibly create and apply a new rule of constitutional law to upset a state conviction on collateral review in violation of *Teague v. Lane*, 489 U.S. 288 (1989), *abrogated in part by Edwards v. Vannoy*, 141 S. Ct. 1547 (2021). *See Balentine*, 2017 WL 9470540, at *10. As in *Shore*, Balentine's argument depends on a proposed rule of constitutional law requiring that waiver of the right to present mitigation evidence be "knowing and informed."

No. 18-70035

The district court noted further that *Shore*'s holding relied upon and was supported by the Supreme Court's decision in *Schriro v. Landrigan*, which, in considering an ineffective-assistance claim like Balentine's, held that it has "never imposed an 'informed and knowing' requirement upon a defendant's decision not to introduce evidence" in mitigation of a death sentence. *Id.* (quoting *Schriro*, 550 U.S. at 479). We agree with the district court that *Shore* applies to Balentine's case and forecloses his argument about whether his instruction was knowing and informed.

While Balentine argues that his waiver was not "informed and knowing" because he did not know what mitigation evidence might be available, this contention is simply not supported by the evidence. As the district court found, Balentine's reasoning was based on his expectations of quality of life in prison for a life sentence versus a death sentence, not on what he perceived as his likelihood of receiving a life sentence. To the extent that additional mitigation evidence would have made it more likely that he would receive a life sentence rather than a death sentence, this was irrelevant to the reasoning he expressed to his counsel. He said that he wanted a death sentence.

## B.

In the alternative, the district court held that even if our precedent did not foreclose Balentine's argument on appeal, Balentine did not show that his ineffective assistance of trial counsel claim had merit.[10] *Balentine*, 2017

---

[10] The district court concluded that "Balentine's rejection of a life sentence and his instructions to not call any punishment witnesses eliminates the necessity to address trial counsel's effectiveness in the investigation and presentation of mitigating evidence." *Balentine*, 2017 WL 9470540, at *12. However, it addressed the substance of Balentine's ineffective assistance of trial counsel claim as an alternative holding. We affirm on both the district court's main and alternative holdings.

WL 9470540, at *12. Balentine's ineffective assistance of trial counsel claim is based on his assertion that trial counsel failed to conduct an adequate investigation into mitigating evidence. Ultimately, the district court held that Balentine's claim failed to satisfy either prong of the *Strickland* standard necessary to show substantiality. *Id.* at *16.

First, the district court found that an adequate mitigation investigation had been conducted, referencing the various investigatory steps taken by the trial investigator, Kathy Garrison. Specifically, the court noted:

> Investigator Garrison testified she met with Balentine, established a good relationship, and received helpful information about his background, family history, names and ages of family members, what his mother did for a living, family doctor, medical history, employment history, criminal history, alcohol and marijuana use, and contact information. Balentine also told her about the threats that were made against him by the victims and the victims['] friends. She obtained authorizations and ordered prison records, medical records, educational records, hospital records, mental health records and employment records. She called doctors, schools, hospitals, former employers and family members. She looked for a mental health expert to perform an evaluation of Balentine and get an MRI but could not obtain anyone. She located mitigation witnesses, served subpoenas and gathered the witnesses for trial. She spoke with Balentine's mother, who refused to come to Amarillo for the trial. She also attempted to contact other family members but some hid from her and others could not be located.

*Id.* at *14 (citations omitted).

The district court determined this evidence "was what is generally considered to be mitigation evidence." *Id.* at *15. The district court concluded that "[w]hile Balentine has shown additional investigation and mitigation evidence could have been obtained, his argument comes down to

No. 18-70035

a matter of degrees" and that his argument "relies upon precisely the sort of judicial second-guessing that *Strickland* was intended to avoid." *Id.* at *16.

We agree with the district court that, even assuming *arguendo* that the additional evidence developed by federal habeas counsel could have improved the available case for a life sentence, this is not enough to establish a claim of ineffective assistance of counsel. *Id.* All of Balentine's arguments—that trial counsel did not begin the investigation soon enough, that they did not try hard enough to gather records or get his mother to testify, that they did not find enough witnesses—come down to a matter of degrees. As we have noted before, "[w]e must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009) (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000)). *Strickland* requires that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689.

Moreover, the district court noted that the major difference between the evidence gathered by Investigator Garrison, and subsequent investigation at the evidentiary hearing was the testimony of expert witnesses and mental health experts. The district court determined that this evidence was "double-edged"—that is, the experts' testimony regarding Balentine's deficiencies could have hurt Balentine as much as it would have helped him. *Balentine*, 2017 WL 9470540, at *13. Even if such testimony could have persuaded the jury that his mental health was an adequate basis to mitigate his triple homicide, the same evidence could have also caused the jury to determine that Balentine was a significant threat of future dangerousness. *Id.*; *see Clark v. Thaler*, 673 F.3d 410, 423 (5th Cir. 2012) (stating that mitigation evidence is "double-edged" when it "might permit an inference

18

No. 18-70035

that [the defendant] is not as morally culpable for his behavior, it also might suggest [that the defendant], as a product of his environment, is likely to continue to be dangerous in the future" (quoting *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002))); *see also* Tex. Code Crim. Proc. Ann. art. 37.071 § 2(b)(1) (permitting a jury to impose the death penalty only if it finds unanimously and beyond a reasonable doubt "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society").

The district court determined that the double-edged nature of the evidence that emerged from the subsequent investigation supported its conclusion that Balentine could not show the requisite prejudice under *Strickland. Balentine*, 2017 WL 9470540, at *15. The district court's ruling accords with our precedent. As we said in *Clark*, "it is uncertain whether reasonable counsel would have used the evidence had it been available; in any event, it is unlikely to have had a significant mitigating effect had counsel presented it." 673 F. 3d at 423 (quoting *Ladd*, 311 F.3d at 360).

Finally, we determine that the aggravating evidence in Balentine's case makes it "virtually impossible to establish prejudice." *Ladd*, 311 F.3d at 360. "[I]n assessing prejudice, [courts] reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *accord Clark*, 673 F.3d at 424.

In this case, Balentine murdered three teenagers as they slept—only one of whom he knew. The jury heard evidence that spoke to the "cold-blooded nature of the triple homicide," *Balentine*, 2017 WL 9470540, at *14, and to Balentine's criminal history.

At trial, the jury heard the tape-recording of Balentine's confession to the murders of the three teenage boys, including the calm and calculated way that he prepared for the crime. First, he walked five or six miles to the house

19

No. 18-70035

where the boys slept. After entering the house, he got himself a drink from the kitchen. He realized that his gun was jammed and left the house to test it by shooting it in the alley. Then, he returned and shot all three boys in the head as they slept. At sentencing, the State also pointed to statements in his confession as demonstrating that he felt no remorse for his actions.

At sentencing, the State also presented evidence of Balentine's earlier criminal behavior, going back to when he was a teenager. In 1985, he was adjudicated delinquent by a juvenile court for having burglarized a high school JROTC building and stolen rifles and uniforms. In 1986, he was arrested at a Wal-Mart after attempting to steal a large quantity of firearms and sentenced to five years' imprisonment. In 1989, after being released from prison, he was convicted of robbery, stealing money and cigarettes from a victim whom he struck in the head with a bottle.

Then, several years later, Balentine kidnapped and assaulted a woman who worked at the same nursing home where he had briefly worked in maintenance. The victim herself provided testimony at sentencing and described the November night in 1996 that began when she heard a loud crashing noise in her home. A window in her back bedroom had been busted out. She tried to call the police, but her phone lines had been cut. She grabbed a baseball bat and tried to make it to her car parked outside. As she was putting her key in the door, a man ran towards her. He grabbed her by the throat and told her, by name, to stop screaming or he would cut her. After a struggle, he got her inside her vehicle. Balentine drove away with her inside, and she was only able to escape when he stopped at a convenience store approximately 45 minutes away from where she lived.

In view of this overwhelming aggravating evidence, there is no "reasonable probability" that, had the jury heard the mitigation evidence, "it would not have imposed the death penalty." *Clark*, 673 F.3d at 424; *see also*

20

No. 18-70035

*Smith v. Davis*, 927 F.3d 313, 338–39 (5th Cir. 2019) (concluding that petitioner failed to show prejudice because his "weak evidence of mental illness" paled in comparison to the State's "strong evidence of future dangerousness" and thus his new evidence did not create a "'reasonable probability that at least one juror would have struck a different balance' among mitigating and aggravating factors that would have resulted in a sentence of life instead of death" (quoting *Wiggins*, 539 U.S. at 537)), *cert. denied*, 140 S. Ct. 1299 (Mar. 9, 2020).

For all of these reasons, and especially in view of the aggravating evidence, we determine that the district court's determination that Balentine did not demonstrate prejudice under *Strickland* was proper. We affirm the district court's alternative holding that even if Balentine's claim were not foreclosed by his decision to reject the plea offer of a life sentence and instruct counsel to not call any punishment witnesses because he preferred the death penalty, his claim would still fail to satisfy both prongs of the *Strickland* test. Thus, there is no merit to Balentine's ineffective assistance of trial counsel claim. [11]

## IV.

For the foregoing reasons, we conclude that Balentine's claim is unexhausted and therefore procedurally defaulted, and that Balentine cannot rely on the *Martinez* exception to overcome the procedural default of that

---

[11] Because the district court concluded that Balentine's claim of ineffective assistance of trial counsel has no merit, the court also concluded that his state habeas counsel could not have been ineffective in failing to present it. *See Garza*, 738 F.3d at 676 (holding that "habeas counsel was not ineffective in failing to raise the claim at the first state proceeding" because "there was no merit to [the petitioner's] claim"). We agree with the district court. Because Balentine's ineffective assistance of trial counsel claim has no merit, his state habeas counsel was not ineffective in failing to present it.

No. 18-70035

claim because his ineffective-assistance-of-counsel claim is meritless. We AFFIRM the district court's denial of Balentine's Rule 60(b) motion.